IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3025-D

| | | |
|---|---|---|
| MARTIN ALVA CRAWFORD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ROBERT C. LEWIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On March 5, 2010, Martin Alva Crawford, a state inmate, filed this action under 42 U.S.C. § 1983 [D.E. 1]. Crawford seeks leave to proceed in forma pauperis under 28 U.S.C. § 1915 [D.E. 2]. On April 1, 2010, the court reviewed the complaint pursuant to 28 U.S.C. § 1915, allowed the action to proceed [D.E. 4], and the clerk directed North Carolina Prisoner Legal Services ("NCPLS") to investigate Crawford's claims [D.E. 5–6]. On June 22, 2010, NCPLS filed a response to the order of investigation, indicating that it had investigated Crawford's claims and determined that appointment of counsel was not warranted [D.E. 15].

On July 21 and September 16, 2010, defendants answered the complaint [D.E. 20, 43]. On February 9, 2011, the court disposed of several motions (including Crawford's motions for appointment of counsel), and granted in part defendants' motion to dismiss, and allowed plaintiff's claims against defendants Sanders, Ellison, Huffman, Garrison, Buck, Johnson, Gonzales, and Crudup to proceed [D.E. 60]. On February 10, 2011, Magistrate Judge William A. Webb entered a scheduling order [D.E. 63]. On April 11, 2011, the remaining defendants moved for summary judgment [D.E. 65] and submitted affidavits and other evidence in support of their motion [D.E. 66]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified

Crawford about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 67]. On April 11, 2011, Crawford moved for an extension of time to appeal the court's denial of counsel [D.E. 68], along with a declaration [D.E. 69]. On April 15, 2011, Crawford responded to the scheduling order and requested time to file his own dispositive motion [D.E. 70]. On April 20, 2011, Crawford responded in opposition to defendants' motion for summary judgment [D.E. 71]. On April 28, 2011, Crawford moved for summary judgment [D.E. 72]. On May 11, 2011, Crawford submitted a letter alleging retaliation [D.E. 73]. On September 23, 2011, Crawford notified the court of his change of address and alleged that other "inmates ... steal my papers and file bogus things into the Courts by forging my signature" [D.E. 74]. As explained below, the court grants defendants' motion for summary judgment [D.E. 65] and denies plaintiff's motions [D.E. 68, 69, 72].

I.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment initially must demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted).

In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. Scott v. Harris,

550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment; "there must be evidence on which the [fact finder] could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

In the light most favorable to Crawford, the facts are as follows. Crawford has AIDS and has often refused medication, which has caused damage to his spine and left-sided weakness secondary to AIDS-related peripheral neuropathy. Carriker Aff. ¶¶ 7–8.[1] Crawford also has a history of severe back pain due to a 2001 car accident. Id. ¶ 7. Crawford uses a wheelchair and asserts that he cannot stand or walk.[2] Compl. at 5; [D.E. 70] at 2.

On July 22, 2009, along with two other inmates, Crawford was scheduled to be transported by defendants Huffman and Buck and another correctional officer from Central Prison in Raleigh ("Central") to Alexander Correctional Institution ("ACI") in Taylorsville, North Carolina. Compl. at 5; Whitener[3] Aff. ¶ 9; Johnson Aff. ¶ 7; Huffman Aff. ¶ 6. Crawford "is on I-CON status and housed in segregation." Whitener Aff. ¶ 9. Before the scheduled departure, Crawford refused to leave Central, "decided to feign inability to ambulate[,]" and was examined in Central's emergency room. Carriker Aff. ¶ 13. "Before leaving Central Prison Plaintiff was snatched down from the

---

[1] Delynne Carriker is not a party to this action. Carriker Aff. ¶ 2. She is employed by the North Carolina Department of Correction as a nurse at Lanesboro Correctional Institution, where Crawford was incarcerated when he filed this complaint. Id. ¶¶ 4, 6.

[2] Carriker states that she "ha[s] personally witnessed Plaintiff standing to move from his bunk to his wheelchair, moving without any distress to take off his shoes in his wheelchair, and using his feet to move around in his wheelchair." Carriker Aff. ¶ 25.

[3] Keith Whitener is the Correctional Administrator at ACI. Whitener Aff. ¶ 3. Whitener "reviewed and approved the pertinent incident report" concerning Crawford's transportation from Central to ACI. Id. ¶ 7. On February 9, 2011, the court dismissed Crawford's claims against Whitener [D.E. 60].

3

standing position from the top steps of the transport van backwards causing his back to get injured on the arm of the wheelchair and then fell all of the way to the concrete landing." Compl. at 6; see Huffman Aff. ¶ 8 (stating Crawford "was helped into the first seat on the van"). Defendant Huffman buckled Crawford into his seat. Huffman Aff. ¶ 8.

Shortly after the transport van began the trip, "the other two inmates began cutting themselves, and the Correctional Officers notified [defendant] Johnson at Central, who advised them to return and have them checked by medical staff." Whitener Aff. ¶ 13; see Johnson Aff. ¶ 8 ("While en route to [ACI], the transport van had to be turned around due to inmates cutting themselves and screaming."); see Huffman Aff. ¶ 9. Defendant Huffman "looked into the back [of the van] . . . and saw Plaintiff laying [sic] on the floor screaming." Huffman Aff. ¶ 9. The van returned to Central, where defendants Saunders, Gonzalez, Johnson, and another correctional officer "were waiting." Huffman Aff. ¶ 10; see Johnson Aff. ¶ 9. Defendant Huffman retrieved Crawford's wheelchair, and defendant "Buck and Central staff pulled Plaintiff to the edge of the van and put him in the wheelchair[.]" Huffman Aff. ¶ 10; see Johnson Aff. ¶ 10; cf. Compl. at 6 ("Plaintiff was also dragged on [the] floor board of the van while handcuffed behind the back, [with] his body weight pressing down on his binding wrist hands and twisted arms . . . [and then] lifted up and [dropped] back down on his hands wrist twisted arms, [and] dragged by the leg cuffs-n-chain [sic] . . . .").

Central medical staff evaluated all three inmates, and "found nothing wrong with" Crawford. Johnson Aff. ¶ 11. The other inmates received treatment for their self-inflicted injuries. Id. ¶ 10; Huffman Aff. ¶ 12. Defendants Johnson, Huffman, and Buck then "strip-searched" Crawford in a holding cell. Huffman Aff. ¶ 13; Johnson Aff. ¶ 12. Crawford refused to comply with defendant Johnson's instruction to stand, and Johnson instructed defendants Buck and Huffman "to hold

4

Plaintiff while staff conducted the strip search." Johnson Aff. ¶ 12; Huffman Aff. ¶ 13. Defendant Johnson then "instructed staff to place Plaintiff in full restraints with his hands behind his back." Johnson Aff. ¶ 13; Huffman Aff. ¶ 13. Crawford then sat back down in his wheelchair, and Huffman "pushed him to the transport van." Huffman Aff. ¶ 13.

Upon returning to the transport van, Crawford refused to comply with defendant Johnson's instructions to get into the van, and defendant Johnson instructed defendants Saunders and Gonzalez to pick up Crawford and place him in the van. Huffman Aff. ¶ 14; see Johnson Aff. ¶ 14. Defendants Saunders and Gonzalez fastened Crawford's seatbelt. Huffman Aff. ¶ 14. During the trip to ACI, Crawford was "handcuffed behind his back in such position of the binding tight cuffs, arms twisted, bleeding," which caused "excruciating pain[.]" Compl. at 6.

When the transport van arrived at ACI on July 23, 2009, Crawford "was in [sic] the floor of the transport van." Whitener Aff. ¶¶ 10–11. A cell extraction team was waiting for the transport van "due to the reported behavior of" the other two inmates. Id. ¶ 14; see Compl. at 7. Two correctional officers "entered the vehicle and asked inmate Crawford if he needed assistance in getting out of the van and into his wheelchair, and he replied, 'Yes.'" Whitener Aff. ¶ 10; see Compl. at 7. An ACI nurse performed a medical screening on Crawford, and observed "a 1-2 centimeter tear to his elbow, which was cleaned and dressed." Whitener Aff. ¶ 11; see Carriker Aff. ¶ 14. Crawford "refused medication for pain . . . and . . . refused to answer medical staff's health screen questions." Whitener Aff. ¶ 11. Crawford "was already on disciplinary segregation when he arrived at [ACI] and, therefore, was taken to segregation via a wheelchair." Whitener Aff. ¶ 17; see Compl. at 7.

On July 26, August 1, and August 10, 2009, Crawford complained of pain in his back, neck, right arm, and hand. Carriker Aff. ¶ 15. On August 14, 2009, an ACI doctor examined Crawford and ordered an X-ray of his right hand and lumbar spine. Id. ¶ 16. The X-rays showed that

5

Crawford's right hand was normal, with no fracture or dislocation and no appreciable soft tissue swelling. Id. ¶ 17. Crawford's lumbar spine was also normal, with no fracture or no soft tissue swelling, and mild degenerative changes of the cervical spine. Id. ¶¶ 17–18. Thus, when compared with X-rays performed in 2006, which "showed moderately advanced degenerative disc disease of" Crawford's cervical spine, Crawford's spine was not significantly different after the July 23, 2009 transport to ACI. See id. ¶¶ 11, 26.

II.

As for Crawford's excessive force claim, the remaining defendants seek summary judgment and argue that Crawford cannot satisfy the objective and subjective prongs of the test for an Eighth Amendment excessive force claim. Defs.' Mem. 13–17; see, e.g., Farmer v. Brennan, 511 U.S. 825, 834 (1994). The Eighth Amendment protects inmates from cruel and unusual punishment. See Wilson v. Seiter, 501 U.S. 294, 298–99 (1991); Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). To succeed on an excessive force claim under the Eighth Amendment, a prisoner must establish that "the officials act[ed] with a sufficiently culpable state of mind" and that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (alteration in original) (citations and quotations omitted). The Supreme Court recently clarified that "[t]he core judicial inquiry . . . [is] not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010) (per curiam) (citations and quotations omitted). The Court continued, however:

> This is not to say that the absence of serious injury is irrelevant to the Eighth Amendment inquiry. . . . [N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and

6

Case 5:10-ct-03025-D   Document 75   Filed 10/20/11   Page 6 of 10

unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

Id. (citations and quotations omitted).

Crawford contends that the force defendants applied to him was "for no good legitimate reasons to restore discipline because he was not out of order[,] he was asking for help from the corrections officers to get him out of a life-threatening situation, but the defendants used physical force that has caused plaintiff long standing injuries[.]" Pl. Resp. Defs.' Mot. Summ. J. 1. However, Crawford's medical records belie his description of his injuries. Central medical staff examined Crawford shortly after the transport van returned to Central and cleared him for transport. Huffman Aff. ¶ 12; Carriker Aff. Ex. at 21 (nurse's assessment dated 7/22/09). Upon Crawford's arrival at ACI, a nurse examined him and observed "no redness or swelling to area with a skin tear noted to right elbow which was cleansed and antibiotic ointment applied." Carriker Aff. ¶ 14. Moreover, Crawford refused the nurse's offer of pain medication. Id. Furthermore, Crawford has not shown that any defendant used force "of a sort repugnant to the conscience of mankind." Wilkins, 130 S. Ct. at 1178 (quoting Hudson, 503 U.S. at 9). He also has not shown that any defendant had a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297. In fact, the record demonstrates that any force used on Crawford was in a good faith effort to maintain or restore discipline and, in physically placing him into and removing him from the transport van, the defendants were not acting "maliciously and sadistically to cause harm." Wilkins, 130 S. Ct. at 1178. Accordingly, the court grants summary judgment to defendants on plaintiff's excessive force claim. See, e.g., May v. Vanlandingham, No. 5:06-CT-3124-D, 2008 WL 2278501, at *5 (E.D.N.C. June 3, 2008) (unpublished), aff'd, 293 Fed. Appx. 983 (4th Cir. 2008) (per curiam) (unpublished).

7

Next, the court addresses Crawford's motion "for more time [to] appeal the court's denial of counsel" [D.E. 68], which the court construes as a motion for reconsideration of the court's prior order. Crawford states that he "has become very stressed out and really needs the help of a[n] attorney," as "there is lots of work to be done and . . . without an attorney by his side justice or fairness will not be served in this case." [D.E. 68] at 1. Crawford further asserts that his "signature has been forged and legal documents of importance to his case ha[ve] been allowed to be taken by the administration and put into the hands of another inmates." Id.; see also [D.E. 69] at 10. Crawford also seeks a transfer from Lanesboro Correctional Institution [D.E. 69] at 1, which is now moot given his transfer to Maury Correctional Institution [D.E. 74].

There is no right to counsel in civil cases absent "exceptional circumstances." See Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated in part on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. of Iowa, 490 U.S. 296 (1989); Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975). The existence of exceptional circumstances "hinges on [the] characteristics of the claim and the litigant." Whisenant, 739 F.2d at 163. Crawford's claims are straightforward, and the case does not present exceptional circumstances. Moreover, Crawford presents his claims proficiently and has not shown that he has been prevented from pursuing this litigation by any forged signatures or confiscation of documents. Indeed, his extensive filings in this case demonstrate the opposite. Thus, Crawford has failed to present any argument warranting reconsideration or to establish any exceptional circumstances, and the court denies Crawford's motion [D.E. 68].

Finally, it appears that Crawford seeks to amend his complaint to add allegations concerning alleged retaliation, interference with legal mail, and possibly a disciplinary charge, all occurring at Lanesboro Correctional Institution ("Lanesboro") in Anson County, North Carolina. See, e.g., [D.E. 69] at 7 (titled "Not Planed Additional Complaint"). Crawford's request to amend his complaint to

add claims concerning Lanesboro implicates Rule 20(a)(2) of the Federal Rules of Civil Procedure, which states:

> Persons . . . may be joined in one action as defendants if:
> (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 20(a)(2) does not provide a license to add multiple defendants to a lawsuit where the claims against the defendants are unrelated. See, e.g., George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007); Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997); Robinson v. Johnson, No. 3:07-CV-449, 2009 WL 874530, at *1 (E.D. Va. Mar. 26, 2009) (unpublished); Showalter v. Johnson, No. 7:08-CV-00276, 2009 WL 1321694, at *4 (W.D. Va. May 12, 2009) (unpublished). Moreover, Crawford's claims may

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b). As noted, Crawford's new allegations arose at Lanesboro in Anson County, North Carolina, which is located in the Western District of North Carolina. 28 U.S.C. § 113(c). Thus, venue is proper in that district. See 28 U.S.C. § 1391(b). Accordingly, the court dismisses any claim arising at Lanesboro without prejudice.

III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 65], DENIES plaintiff's motion for extension of time to appeal the court's denial of counsel [D.E. 68], DENIES plaintiff's motion to amend [D.E. 69], and DENIES plaintiff's motion for summary judgment [D.E. 72]. The clerk shall close this case.

SO ORDERED. This 20 day of October 2011.

/s/ James C. Dever
JAMES C. DEVER III
Chief United States District Judge